(38 Misc. Rep. 641.)

### BAILEY v. CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County. September, 1902.)

1. INJUNCTION—INJURY FROM SEWER—OYSTER BEDS.

In 1889 the town of Flatbush was authorized by Laws 1889, c. 161, to construct a trunk sewer, which it did in 1893. In 1895 the state commissioner of fisheries leased for 15 years a tract of land in Jamaica Bay for the cultivation of shellfish. The town of Flatbush consolidated with New York in 1888. The sewer broke down soon after its construction, so that no sewage reached the oyster beds until 1899, when the sewer was repaired by the city of New York, the effect of which was to kill all the oysters. *Held*, that the lessee was entitled to an injunction against the city of New York, and also to recover damages for the loss caused thereby.

2. SAME.

A city will not be summarily enjoined from using a sewer, where it has tried to remove a defect causing the damage.

Action by James A. Bailey against the city of New York. Judgment for plaintiff.

Gifford, Stearns & Hobbs, for plaintiff.
George L. Rives, Corp. Counsel, for defendant.

RUSSELL, J. On or about the 10th of September, 1895, the commissioners of fisheries, game, and forest of the state of New York, as they were lawfully authorized to do, duly leased, by instrument dated on that day, to Smith Watts, for the term of 15 years from said date, a tract of land consisting of 6.4 acres, known as "Lot No. 226," in Jamaica Bay, and under the waters thereof, the same being in water adjacent to territory formerly known as the "Town of Flatlands," it being expressly understood and provided in said lease that the same was given and accepted on the condition, as required by law, that the said lands should be used for shellfish cultivation, and for no other purpose. On or about the 7th day of February, 1898, Smith Watts, the lessee in said lease named, duly assigned the same to plaintiff, who has ever since been, and now is, the lawful owner thereof, and in possession of said premises, and who was at the time of said assignment, and has ever since been, a resident of the state of New York. The sewer for the purpose of restraining the operation of which this action is brought was constructed from that portion of the city of New York formerly known as the "Town of Flatbush," in conformity with chapter 161 of the Laws of 1889 of the state of New York, which act purported to authorize said commissioners to devise and make a plan for building one or more trunk sewers to take and discharge the sewage matter of said town of Flatbush into the water

aforesaid. The said act did not give or purport to give said commissioners or said town of Flatbush the right to build or maintain any sewer in other than a lawful manner, or to discharge the same at such a point or in such a manner as to injure, appropriate, or interfere with the proper use of the land held by the plaintiff under the provisions of the lease aforesaid. The map or plan for the construction of said sewer was duly prepared and filed by said commissioners; and said sewer, constructed in accordance with said plan, was ready for use either in the fall of 1892 or the winter of 1893. Subsequently to the passage of said act, and pursuant to the provisions of chapter 356 of the Laws of 1894, the town of Flatbush ceased to be a separate municipal corporation and one of the political divisions of the county of Kings, and became annexed, merged in, and made part of the city of Brooklyn, and the city of Brooklyn, including the said town as aforesaid, pursuant to provisions of chapter 378 of the Laws of 1897, ceased to be a separate municipal corporation and one of the political divisions of the county of Kings, and became annexed to, merged in, and made a part of the city of New York, and embraces that portion of said county of Kings in which said oyster bed is located. At the time of the assignment of said lease to plaintiff, and subsequently thereto, until about the month of June, 1889, the waters of Jamaica Bay at the point at which the land covered by said lease was located were uncontaminated and unpolluted by any discharge from said sewer. Said land and the waters covering the same were in every respect adapted to oyster culture. On or about the 16th day of May, 1898, plaintiff, having entered into the possession of said land, proceeded to plant 1,300 bushels of seed oysters thereon. This seed ran about 1,600 to the bushel, and in the ordinary course of nature, and except for the pollution of said water by the operation of said sewer, would have increased in the succeeding 18 months eightfold, so that in the ordinary course of oyster culture the said crop would have been matured and ready for harvest in the spring of 1900, and at the ratio named would have amounted in the aggregate to about 10,400 bushels. Soon after the said sewer had been put in operation in the spring of 1893, the said sewer broke down at a point some distance from its mouth in such a way that subsequently sewage therefrom was not discharged into the waters so that the same flowed over plaintiff's lands, but was discharged on the flats at a considerable distance from the mouth of the sewer. In June, 1899, the sewer was repaired in such a way that subsequently the sewage was discharged into the waters of Jamaica Bay in such a manner that some was carried down and deposited in large quantities over the oysters planted by the plaintiff, as aforesaid. Prior to the repairing of said sewer the plaintiff made frequent examinations of said oysters, and found the bed in excellent condition, and the oysters growing well; but subsequently to the repairing of said sewer, on making such examination, he found said oysters covered with sewage, and in the spring of 1900 he proceeded to take up said oysters, and removed about 9,990 bushels, of which practically all were dead. The said oysters were found to be covered with sewage and noxious deposits, which not only injured, but practically destroyed, the entire

bed, and plaintiff was able to realize from the oysters so removed only $400. The evidence introduced show that the ratio of eight bushels of oysters was a fair average increase for every bushel planted, which would have allowed for the entire 1,300 bushels of seed 10,400, but the amount actually taken up by the plaintiff was 9,990 bushels. A fair value of the oysters so taken up in good condition out of the bed in the spring of 1900, less the cost of harvesting said oysters, was $8,576, for which plaintiff realized the sum of only $400, leaving a balance of $8,176; and on the grounds before stated the court decides: That plaintiff is entitled to recover from defendant the damages suffered by reason of loss of crop, and that the measure of damages as to the two years from 1898 to 1900 is the value of the crop destroyed, amounting, after crediting the sum received as aforesaid, to $8,176. That the plaintiff is entitled to an injunction restraining the city of New York from continuing the operation of said sewer in such manner as to prevent the use of the land for the purpose for which it was leased and is now held by the plaintiff, but in view of the fact that the said city is endeavoring to remove or obviate the objections to the sewer, the injunction will be suspended until the 1st day of November, 1903, with leave to defendant to then move for an extension of time on satisfactory proof that the condition of the city requires a longer time for completion of the sewer project. During such extension, if granted, the damages for usable value of the said ground shall continue at a proportionate rate stipulated, namely, $500. That the plaintiff is entitled to a judgment for damages for a loss of crop amounting to $8,176, and damages to the usable value of the ground, amounting to the 1st day of November, 1903, to $500, making in the aggregate the sum of $8,676, with costs to be taxed, and an extra allowance to plaintiff, amounting to $433.80. Judgment is directed accordingly.

Judgment accordingly.